**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   *v.*<br><br>JEREMY CEDENO,<br><br>   *Defendant*. | **No. 21 Cr. 17 (KPF)** |

**MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO**
**28 U.S.C. § 2255**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND............................................. 3

      A.   Jeremy Cedeno.................................................................................. 3

      B.   The Underlying Prosecution ........................................................... 4

      C.   The Plea Agreement......................................................................... 4

      D.   The Presentence Report and Error .................................................. 6

      E.   The Perdomo Sentencing and Supplemental Submission............................ 7

      F.   Mr. Cedeno's Sentencing................................................................. 8

      G.   Subsequent Developments ............................................................... 8

I.     Mr. Cedeno Is Entitled to Relief Under 28 U.S.C. § 2255 ................................. 9

      A.   Legal Standard ................................................................................. 9

      B.   Mr. Cedeno Satisfies Both *Strickland* Prongs........................................... 10

            i.   Trial Counsel's Performance Was Objectively Unreasonable...................... 11

            ii.   Trial Counsel's Performance Prejudiced Mr. Cedeno .................................. 14

II.    The Statute of Limitations Does Not Bar Mr. Cedeno's Claim........................................ 16

      A.   Legal Standard ................................................................................. 16

      B.   Mr. Cedeno Pursued His Rights Diligently ................................................. 17

      C.   Extraordinary Circumstances Prevented Timely Filing............................ 19

CONCLUSION.............................................................................................................. 20

## TABLE OF AUTHORITIES

**Cases**

*Baldayaque v. United States*,
338 F.3d 145 (2d Cir. 2003)......................................................................... 17, 19, 20

*Cobb v. United States*,
2019 WL 2607002 (E.D.N.Y. Jan. 11, 2019) ........................................................... 11

*Cornell v. Kirkpatrick*,
665 F.3d 369 (2d Cir. 2011)...................................................................................... 13

*Cox v. Donnelly*,
432 F.3d 388 (2d Cir. 2005)...................................................................................... 13

*DeLuca v. Lord*,
77 F.3d 578 (2d Cir. 1996)........................................................................................ 14

*Diaz v. Kelly*,
515 F.3d 149 (2d Cir. 2008)...................................................................................... 19

*Dillon v. United States*,
560 U.S. 817 (2010).................................................................................................. 16

*Doe v. Menefee*,
391 F.3d 147 (2d Cir. 2004)...................................................................................... 17

*Glover v. United States*,
531 U.S. 198 (2001).............................................................................................. 10, 15

*Gonzalez v. United* States,
722 F.3d 118 (2d Cir. 2013)................................................................................... 9, 15

*Green v. United States*,
260 F.3d 78 (2d Cir. 2001)................................................................................... 16, 17

*Holland v. Florida*,
560 U.S. 631 (2010)............................................................................................. 17, 19

*Johnson v. United States*,
313 F.3d 815 (2d Cir. 2002)............................................................................... passim

*Knowles v. Mirzayance*,
556 U.S. 111 (2009)................................................................................................... 10

*Martinez v. Superintendent of E. Corr. Facility* (*Martinez I*),
806 F.3d 27 (2d Cir. 2015)........................................................................................ 17

*Martinez v. Superintendent of E. Corr. Facility* (*Martinez II*),
2016 WL 6462123 (E.D.N.Y. Oct. 31, 2016).................................................... 17, 18

*Massaro v. United States*,
538 U.S. 500 (2003).................................................................................................... 9

*Oklu v. United States*,
2016 WL 2731581 (S.D.N.Y. Apr. 27, 2016)........................................................... 11

*Pierre v. United States,*
    2008 WL 3992152 (E.D.N.Y. Aug. 22, 2008)................................................................. 11
*Porter v. United States,*
    2009 WL 2601297 (E.D.N.Y. 2009)............................................................................. 10
*Purdy v. United States,*
    208 F.3d 41 (2d Cir. 2000)........................................................................................... 10
*Rivas v. Fischer,*
    687 F.3d 514 (2d Cir. 2012).......................................................................... 17, 19, 20
*Roe v. Flores-Ortega,*
    528 U.S. 470 (2000)..................................................................................................... 19
*Strickland v. Washington,*
    466 U.S. 668 (1984).......................................................................................... 10, 11, 14
*United States v. Archer,*
    2024 WL 2221350 (S.D.N.Y. May 15, 2024) ............................................................ 11
*United States v. Day,*
    969 F.2d 39 (3d Cir. 1992)........................................................................................... 11
*United States v. Lee,*
    818 F.2d 1052 (2d Cir. 1987)....................................................................................... 14
*United States v. Rivera,*
    117 F. Supp. 3d 172 (E.D.N.Y. 2015) ........................................................................ 11
*United States v. Ursillo,*
    786 F.2d 66 (2d Cir. 1986)........................................................................................... 14
*Williams v. United States,*
    2015 WL 710222 (S.D.N.Y. Feb. 19, 2015)............................................................. 9, 10

**Statutes**

21 U.S.C. § 841(b)(1)(B) ....................................................................................................... 4
21 U.S.C. § 841(b)(1)(D)....................................................................................................... 4
21 U.S.C. § 846....................................................................................................................... 4
28 U.S.C. § 2255................................................................................................................ 9, 16

**Other Authorities**

ABA Standards for Crim. Just. 4-1.3(f) (4th ed. 2017) ................................................... 14
ABA Standards for Crim. Just. 4–8.3(e) (4th ed. 2017) ................................................. 11
Fed. R. Crim. P. 32(a)(1) advisory committee's note to 1983 amendment .................... 14
U.S. Sent'g Comm'n, *Part A of the 2023 Criminal History Amendment Retroactivity Data
    Report* (April 2026)....................................................................................................... 9, 16
U.S. Sent'g Guidelines Manual ch. 5, pt. A (U.S. Sent'g Comm'n 2025) .................... 5
U.S.S.G. § 4A1.1(c)............................................................................................................... 6
U.S.S.G. § 4A1.1(d)............................................................................................................... 9

iii

iv

U.S.S.G. § 4A1.2(c)(1) ................................................................................................. 5, 6
U.S.S.G. § 4A1.2(e)(2) ................................................................................................... 6

## PRELIMINARY STATEMENT

Mr. Cedeno was sentenced based on an inaccurate criminal history calculation that his attorney never contested.  That calculation mattered, because under an upcoming amendment to the Sentencing Guidelines, Mr. Cedeno would have been in a lower criminal history category if his criminal history was calculated accurately. The Court expressly factored that amendment into Mr. Cedeno's sentence.  This error should have been corrected for many reasons, particularly because Mr. Cedeno raised it with his attorney and trusted him to act on it.  Counsel did not. That failure falls below any reasonable standard of professional performance and has caused, and continues to cause, concrete prejudice.

The error first appeared in Mr. Cedeno's plea agreement, which awarded him a criminal history point for a 2017 misdemeanor conviction.  Under the Sentencing Guidelines rule for minor offenses, that conviction triggers a criminal history point only if the sentence included at least thirty days' imprisonment.  Mr. Cedeno was sentenced to conditional discharge.  Mr. Cedeno's presentence investigation report ("PSR") repeated the error.  The PSR assigned Mr. Cedeno six criminal history points:  three valid points, two "status points" for committing the offense while on probation, and one erroneous point.  These six points placed Mr. Cedeno in Criminal History Category III, producing an Advisory Guidelines range of 108–135 months.

Prior to sentencing, Mr. Cedeno repeatedly told his attorney, Mr. McGuinness, that the PSR was wrong.  It stated that he served 30 days in jail for the unlicensed operation of a motor vehicle when he had not.  Mr. Cedeno raised that issue with Mr. McGuinness *multiple* times–the last time on the morning of the sentencing hearing.  And even if his client's word was not enough, the PSR itself should have been a red flag:  it claimed Mr. Cedeno had served thirty days

1

in custody, while admitting, in the very next sentence, that "a request for court records was not sent." None of this prompted Mr. McGuinness to investigate.

Instead, Mr. McGuinness flatly told Mr. Cedeno that correcting the error would not affect his sentence. That was manifestly incorrect. Mr. Cedeno was sentenced on August 17, 2023, less than three months before Amendment 821 of the Sentencing Guidelines went into effect. Amendment 821 eliminated "status points" for defendants with six or fewer criminal history points. Had Mr. McGuinness corrected the erroneous point, Mr. Cedeno would have had three criminal history points—half of the six the PSR assessed—placing him in Criminal History Category II with a Guidelines range of 97–121 months. Mr. McGuinness' mistakenly believed that correcting the point would reduce the total from six to five, leaving the category unchanged. That arithmetic ignored Amendment 821.

The PSR's self-undermining notation, Mr. Cedeno's multiple warnings, and the judge's own colloquy on Amendment 821 at sentencing each gave Mr. McGuinness reason to act. He did not.

This was not a close call. It was clear *at the time of sentencing* that the error mattered. Mr. McGuinness' failure to object prejudiced Mr. Cedeno then, and it continues to prejudice him now. The erroneous PSR followed Mr. Cedeno to the Bureau of Prisons and became an official court record. The same error became critical again when Amendment 821 was made retroactive on February 1, 2024. Because the PSR still contains the incorrectly assessed criminal history point, removing the status points alone keeps Mr. Cedeno in Category III, rather than Category II. As such, he is unable to utilize 18 U.S.C. § 3582 to obtain the benefit of the Amendment.

2

Petitioner Jeremy Cedeno therefore respectfully submits this memorandum of law in support of his motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence on grounds that he received ineffective assistance of counsel.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.  Jeremy Cedeno

Jeremy Cedeno was born in the Bronx in 1986.  Dkt. 178 ("PSR") ¶ 84.  His childhood was marked by poverty, an absent father, and a mother who struggled with addiction—circumstances which led him to begin using drugs and alcohol at a young age.  *Id.* ¶¶ 86–87.  At thirteen, Mr. Cedeno found work in the entertainment business, working as a backup dancer and appearing in the movie "Honey."  *See* Dkt. 201 ("Sentencing Submission") at 2.  But those opportunities quickly dried up.  *See id.*  After returning home at sixteen, his substance abuse escalated.  *Id.*  While serving time for drug offenses, he earned his GED and completed drug treatment.  *Id.*  From 2011 to 2014, Mr. Cedeno worked as a housekeeper and took college classes.  *Id.*  He was promoted to supervisor, but soon after the company conducted layoffs eliminating his position.  *Id.*  After being laid off, Mr. Cedeno returned to selling drugs to make a living.  *Id.*

Mr. Cedeno is a dedicated father to two children and a step-father to his girlfriend's son.  PSR ¶¶ 89, 93; Sentencing Submission at 3.  Before his incarceration he was deeply involved in their daily lives but has been unable to support them since.  PSR ¶ 93.  His longtime girlfriend, Hebelka Mendoza, has described him as a "loving father who was involved in his children's lives on a daily basis prior to incarceration."  *Id.*  Eighteen people submitted letters at sentencing describing him as, among other things, "an amazing dad" and a "giving and family driven person."  Sentencing Submission at 21, 25.  Since his arrest, Mr. Cedeno has completed every educational program available to him, including the Solutions Program and the Resolve to Stop

Violence Program. *Id.* at 4; PSR ¶ 25. Nicole Delgadillo, the Demonstration Program Manager for the Petey Greene Program, a tutoring program at Westchester County Jail, described Mr. Cedeno as a "hardworking, dedicated, and thoughtful student." Sentencing Submission at 49.

Mr. Cedeno has been incarcerated since November 2020, and has experienced harsh pretrial conditions, worsened by the Covid-19 pandemic. *Id.* at 3–4. Visitations were severely restricted and prisoners were frequently forced to remain in their cells for twenty-three hours per day. *Id.* at 4.

### B. The Underlying Prosecution

Mr. Cedeno's case arose out of a joint investigation by the New York City Police Department ("NYPD"), the U.S. Drug Enforcement Administration ("DEA"), and the Federal Bureau of Investigation ("FBI") into a gang known as "YBMG." PSR ¶¶ 27–28. On January 13, 2021, Mr. Cedeno was arrested and swept into the federal prosecution that followed. *Id.* ¶ 46. On July 18, 2022, a grand jury returned a fifteen-count superseding indictment against Mr. Cedeno and six co-defendants. Dkt. 105 ("Superseding Ind."). Mr. Cedeno was named in five of those counts. *Id.*

Throughout these proceedings, Mr. Cedeno was represented by Daniel McGuinness. PSR at 1. Mr. Cedeno spent the two years between his arrest and his plea in pretrial detention– first at Westchester County Correctional Facility, then at MDC Brooklyn. *Id.* ¶¶ 25–26. Mr. Cedeno initially maintained his innocence and pled not guilty to all charges. Dkt. 34 at 15:23.

### C. The Plea Agreement

On March 14, 2023, Mr. Cedeno pled guilty, pursuant to a plea agreement, to a lesser-included offense of Count Two: conspiring to distribute cocaine and heroin in violation of 21 U.S.C. §§ 841(b)(1)(B), 841(b)(1)(D), and 846. Estes Decl. Ex. 1 (the "Agreement"); *see also* Dkt. 166 at 4:10–14; 15:10–16:4.

4

The Agreement assigned Mr. Cedeno four criminal history points, calculated as follows:

- One point was awarded for a January 10, 2017 conviction for aggravated unlicensed operation of a motor vehicle in the third degree, a misdemeanor (the "Unlicensed Driving Conviction").

- One point was awarded for a September 30, 2005 conviction for criminal sale of a controlled substance in the fourth degree, which resulted in a sentence of five years' probation.

- Two points were awarded because Mr. Cedeno allegedly committed the instant offense while on parole.

Agreement at 3–4.  The Agreement calculated a Guidelines range of 108 to 135 months' imprisonment.  *Id.* at 4.

The Agreement improperly awarded the point for the Unlicensed Driving Conviction. Under U.S.S.G. § 4A1.2(c)(1), sentences for driving without a license only count if the sentence was a term of probation of more than one year or a term of imprisonment of at least thirty days. Readily available criminal history records show that Mr. Cedeno was sentenced to conditional discharge—not 30 days' imprisonment—for the Unlicensed Driving Conviction.  Estes Decl. Ex. 2 ("Criminal Record").

Had the point for the Unlicensed Driving Conviction not been awarded, the Agreement would have put Mr. Cedeno in Criminal History Category II, resulting in a Guidelines range of 97 to 121 months' imprisonment.  U.S. Sent'g Guidelines Manual ch. 5, pt. A (U.S. Sent'g Comm'n 2025).  Mr. Cedeno did not appreciate the error in the Agreement, relying on his attorney to review it and confirm the correct Sentencing Guidelines.  Estes Decl. Ex. 3 ("Cedeno Decl.") ¶ 5.

5

The Agreement preserved Mr. Cedeno's right to "assert claims of ineffective assistance of counsel, whether on direct appeal, collateral review, or otherwise." Agreement at 5.

### D.  The Presentence Report and Error

Mr. Cedeno's PSR was issued on May 30, 2023 and assessed a total offense level of 29, consistent with the Agreement. PSR ¶ 65; Agreement at 3. But the criminal history points were calculated differently. The Probation Office assessed Mr. Cedeno six criminal history points: three for drug sale convictions before he turned eighteen, PSR ¶¶ 67–69, one for the Unlicensed Driving Conviction, *id.* ¶ 75 (citing U.S.S.G. §§ 4A1.1(c), 4A1.2(e)(2) and 4A1.2(c)(1)), and two "status points" based on its determination that Mr. Cedeno committed the instant offense while "under probation supervision"—not parole, as stated in the Agreement, *id.* ¶ 77; Agreement at 4. Together, those six points placed Mr. Cedeno in Criminal History Category III, PSR ¶ 78, yielding a Guidelines range of 108 to 135 months. *Id.* ¶ 119.

The Agreement stipulated to only four criminal history points because the parties did not count the two convictions Mr. Cedeno sustained at age 16. Agreement at 3–4. The PSR acknowledged the discrepancy but concluded it "had no impact on the plea agreement as the criminal history category remains unchanged." PSR ¶ 121.

As noted, the point for the Unlicensed Driving Conviction should not have been assessed. The PSR represents that Mr. Cedeno was "sentenced to a conditional discharge with a $200 fine and 30 days' imprisonment." *Id.* ¶ 75. But no 30-day sentence was imposed. *See* Criminal Record. The PSR also contains an internal inconsistency. It states that "[c]ourt records confirm the disposition and sentence imposed," but then states that "[b]ased on the duration of incarceration, a request for records was not sent." PSR ¶ 75.

When he reviewed the PSR, Mr. Cedeno noticed the mistake in the sentence for his Unlicensed Driving Conviction. Cedeno Decl. ¶ 7. Mr. Cedeno brought this mistake to Mr.

McGuinness' attention *multiple* times before and on the day of the sentencing. *Id.* ¶¶ 7–9. Although Mr. McGuinness assured Mr. Cedeno that he would check on this error, it appears he never did, *see id.* ¶¶ 7, 8, despite the PSR itself noting that records did not corroborate the sentence. PSR ¶ 75. When Mr. Cedeno asked Mr. McGuinness whether objecting would change his sentence, Mr. McGuinness told him it would not. Cedeno Decl. ¶ 9.

Although the PSR notes that the Guidelines range for Mr. Cedeno's sentence was 108 to 135 months, PSR ¶ 119, the Probation Office recommended 96 months imprisonment in light of "his difficult upbringing marked by financial struggles and a lack of youthful guidance[,] . . . minimal education and employment history[, and] . . . substance and alcohol use." *Id.* at 34–35. Despite this, the prosecutors filed a letter requesting an above Guidelines sentence. Dkt. 216.

### E.  The Perdomo Sentencing and Supplemental Submission

On August 11, 2023, Mr. Cedeno's co-conspirator, Ivis Perdomo, was sentenced to 188 months' imprisonment. *See* Dkt. 217 ("Perdomo Tr.") at 68:7–21. At the outset of the hearing, the Court acknowledged the forthcoming amendment to the Sentencing Guidelines (Amendment 821), which was scheduled to take effect in November 2023. *Id.* at 13:4–8. The Court explained that the Amendment would eliminate Mr. Perdomo's status points and place him in Criminal History Category III rather than Category IV. *Id.* at 13:16–20. Although the Amendment was not yet effective, the Court stated that it intended to account for its impact through the § 3553(a) factors to avoid a situation in which Mr. Perdomo would file a § 3582(c)(2) motion three months after sentencing. *Id.* at 13:21–14:1. The Court imposed a within Guidelines sentence expressly identifying "the upcoming guidelines amendments" as one of the "countervailing factors" influencing its decision not to impose an above Guidelines sentence. *Id.* at 67:13–19.

Following the Perdomo sentencing, the prosecution filed a supplemental submission in support of an above Guidelines sentence the night before Mr. Cedeno's sentencing hearing. Dkt.

216.  Mr. McGuinness admitted that he did not fully review the letter.  Dkt. 223 ("Sentencing Tr.") at 4:10–23.

### F.  Mr. Cedeno's Sentencing

Mr. Cedeno's sentencing took place on August 17, 2023.  At the sentencing, the Court raised the issue of how the anticipated Amendment on status points would affect the Guidelines. *Id.* at 6:20–7:23.  The Court noted its understanding that the Amendment would lower the criminal history points to four but not affect the Criminal History Category.  *Id.* at 6:20–25.  The government agreed with this analysis, *id.* at 7:1, and Mr. McGuinness stated that he did "not have any basis to contest" it.  *Id.* at 7:22–23.  The Court then pressed Mr. McGuinness on whether he *agreed* that the Amendments would not change the Criminal History Category, and Mr. McGuinness stated that he did.  *Id.* at 7:24–8:4.

Mr. McGuinness did not make any objections at the hearing.  While this Court did not grant an upward variance, Mr. Cedeno was sentenced to 135 months' imprisonment, the top of the Guidelines range.  *Id.* at 51:3–5.

After Mr. Cedeno was sentenced to 135 months in prison, he asked Mr. McGuinness to appeal his sentence.  Cedeno Decl. ¶ 10.  Mr. McGuinness promised to do so, and to visit Mr. Cedeno in prison.  *Id.* at ¶¶ 10–12.  Mr. McGuinness never filed an appeal, and Mr. Cedeno has not heard from McGuinness since his sentencing.  *Id.* at ¶ 11.  Because he could not get in touch with Mr. McGuinness, Mr. Cedeno asked a family friend to check the court records relating to the Unlicensed Driving Conviction.  The friend verified that, according to the criminal record, Mr. Cedeno did not serve a 30-day sentence.  *Id.* at ¶ 13.

### G.  Subsequent Developments

On November 1, 2023, Amendment 821 to the Sentencing Guidelines took effect.  *See* U.S. Sent'g Comm'n, *Part A of the 2023 Criminal History Amendment Retroactivity Data*

8

*Report* (April 2026). As relevant here, Part A of the Amendment narrowed U.S.S.G. § 4A1.1(d) by eliminating "status points" altogether for defendants with six or fewer criminal history points. *Id*. On February 1, 2024, the Sentencing Commission designated Part A of the Amendment retroactive allowing district courts to grant sentence reductions pursuant to this Amendment under 18 U.S.C. § 3582(c)(2). *Id*. On January 29, 2026, Mr. Cedeno moved for a sentence reduction. Dkt. 396. This Court held a conference on that motion on February 18, 2026.

## ARGUMENT

### I.    Mr. Cedeno Is Entitled to Relief Under 28 U.S.C. § 2255

#### A.  Legal Standard

Under 28 U.S.C. § 2255, a prisoner in federal custody can petition the sentencing court to modify his sentence if (1) the sentence was in violation of the Constitution or laws of the United States; (2) the court did not have jurisdiction to impose the sentence; (3) the sentence exceeded the maximum sentence authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). "Generally, a petitioner may not present a habeas claim if he did not properly raise it on direct review." *Williams v. United States*, 2015 WL 710222, at *2 (S.D.N.Y. Feb. 19, 2015). However, the Supreme Court has held that "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255." *Massaro v. United States*, 538 U.S. 500, 505–06 (2003).

That exception reflects the importance of the Sixth Amendment right at issue. "A defendant in criminal proceedings has a right under the Sixth Amendment to effective assistance from his attorney at all critical stages of the proceedings[.]" *Gonzalez v. United* States, 722 F.3d 118, 130 (2d Cir. 2013). To demonstrate ineffective assistance of counsel, a petitioner must

9

show both that (1) "counsel's assistance fell below an objective standard of reasonableness" and (2) the "deficiencies in counsel's performance [were] prejudicial to the defense." *Strickland v. Washington*, 466 U.S. 668, 687–88, 692 (1984).

The first prong, the performance prong, requires "reasonably effective assistance." *Porter v. United States*, 2009 WL 2601297, at *4 (E.D.N.Y. 2009). "The performance inquiry is contextual[.]" *Purdy v. United States*, 208 F.3d 41, 44 (2d Cir. 2000). "No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." *Strickland*, 466 U.S. at 688–89.

To establish the second prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Knowles v. Mirzayance*, 556 U.S. 111, 128 (2009) (internal quotation marks omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 127.

The Second Circuit has found that the failure to object to a sentencing calculation error can result in a "clear lapse in representation." *Johnson v. United States*, 313 F.3d 815, 818 (2d Cir. 2002); *Williams*, 2015 WL 710222, at *6 (holding defense counsel's failure to challenge an error in the Guidelines sentencing range constituted ineffective assistance of counsel). On the second prong, "any [increase in the] amount of actual jail time" due to counsel's errors suffices to establish prejudice. *Glover v. United States*, 531 U.S. 198, 203 (2001).

### B. Mr. Cedeno Satisfies Both *Strickland* Prongs

Mr. Cedeno's claim satisfies both prongs of *Strickland*. Mr. McGuinness' failure to object to a demonstrable error in the PSR, despite Mr. Cedeno raising the issue *multiple* times,

10

fell below the standard of competence required of criminal defense counsel. The prejudice is

self-evident. Had counsel objected, Mr. Cedeno would likely have received a lower sentence.

He would also have remained eligible for retroactive relief under Amendment 821 to the

Sentencing Guidelines—relief from which Mr. McGuinness' silence has now permanently

locked him out.

### i.    Trial Counsel's Performance Was Objectively Unreasonable.

The first prong of *Strickland* requires a defendant to show "that counsel's representation

fell below an objective standard of reasonableness." *Strickland,* 466 U.S. at 688. It is a

"necessity" for a competent criminal defense attorney to have "familiarity with the structure and

basic content of the [Sentencing] Guidelines," which are a "critical . . . facet of federal criminal

proceedings." *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992). The presentence report,

which applies these Guidelines, is thus "the centerpiece" of the proceedings. *United States v.

Rivera*, 117 F. Supp. 3d 172, 181 (E.D.N.Y. 2015). And its significance "does not end at the

sentencing." *Id.* at 182. It also "plays an important role in the defendant's designation to a

correctional facility and in his eligibility for certain programs." *Id.* As such, a failure to object

to an inaccurate PSR is "a clear lapse in representation" which "f[alls] below the range of

competence demanded of attorneys." *Johnson*, 313 F.3d at 818 (internal quotation marks

omitted).[1] Any such error may be considered "*per se* unreasonable." *Pierre v. United States*,

2008 WL 3992152, at *12 (E.D.N.Y. Aug. 22, 2008); *see also*, ABA Standards for Crim. Just. 4–

8.3(e) (4th ed. 2017) ("If a presentence report is made available to defense counsel, counsel

should seek to verify the information contained in it, and should supplement or challenge it if

---

[1] *See also United States v. Archer*, 2024 WL 2221350, at *5 (S.D.N.Y. May 15, 2024) (holding counsel's failure to object to the incorrect Sentencing Guidelines range constituted ineffective assistance of counsel); *Cobb v. United States*, 2019 WL 2607002, at *3 (E.D.N.Y. Jan. 11, 2019) (same); *Oklu v. United States*, 2016 WL 2731581, at *2 (S.D.N.Y. Apr. 27, 2016) (same).

11

necessary."). Mr. McGuinness failed to object to a clear error in the PSR despite being alerted to the error multiple times prior to the sentencing hearing.

Prior to sentencing, Mr. McGuinness reviewed the PSR with Mr. Cedeno. Cedeno Decl. ¶ 6. Mr. Cedeno saw a problem: the report stated that he had served thirty days in custody for the Unlicensed Driving Conviction. PSR ¶ 75. He had not. He told Mr. McGuinness, who promised to investigate. Cedeno Decl. ¶ 7. Mr. Cedeno raised the issue again multiple times to Mr. McGuinness and was brushed aside. *Id.* ¶ 8. Mr. McGuinness said he had investigated the issue, and a report said Mr. Cedeno served thirty days. *Id.* This implied to Mr. Cedeno that despite his honest objections, Mr. McGuinness believed this alleged report over him. The day of sentencing, Mr. McGuinness told Mr. Cedeno that objecting to the PSR would not affect his sentence. *Id.* ¶ 9.

Mr. McGuinness' failure to investigate and raise the issue was unreasonable in light of the clear guidance from the Court that the sentence would take into account the Guidelines Amendments. On August 11, 2023, six days before Mr. Cedeno's sentencing, his co-conspirator, Ivis Perdomo, was sentenced. At Perdomo's sentencing hearing, the Court brought up Amendment 821 to the Sentencing Guidelines and noted that "as a result of this amendment, [Perdomo] would be . . . in criminal history category III rather than . . . criminal history category IV." Perdomo Tr. 13:16–13:20. The Court then explicitly stated, "I am permitted to consider using the 3553(a) factors, the guidelines as they will exist in November" in order to avoid a § 3582(c)(2) motion being filed. *Id.* 13:23–14:1. Ultimately, Perdomo's sentence was calculated in light of Amendment 821. *See id.* 67:13–67:18 ("[T]o make this clearer, I would have gone above guidelines, other than these countervailing factors" which include "the upcoming guidelines amendments."). The transcript of this hearing was attached to the Government's

12

sentencing submission as to Mr. Cedeno, a document Mr. McGuinness was provided prior to Mr. Cedeno's sentencing.  Dkt. 216.  Had he reviewed this filing, he would have understood the error in the criminal history point was of immediate consequence.

Even without reviewing that filing, Mr. McGuinness should have understood the importance of this issue given the Court's colloquy on this at sentencing.  As it had in Perdomo's sentencing, the Court raised Amendment 821 and indicated it would sentence Mr. Cedeno with the upcoming Amendment in mind.  Sentencing Tr. 7:2–4.  Relying on the erroneous PSR, the Court stated:  "My belief is that the anticipated guidelines amendments on the issue of status points would result, if they were enacted today, in the same criminal history category, but it would just be four instead of six.  Is that your understanding as well?"  *Id.* at 6:21–25.  At that moment, a reasonably competent attorney in Mr. McGuinness' position would consider how objecting to the PSR would affect the Court's calculation.  A reasonably competent attorney would then realize that his choice to forego an objection to the PSR was no longer defensible: the move from six to three criminal history points would yield a lower Guidelines range.  Because the objection had merit–readily available records show that Mr. Cedeno did not serve 30 days for his Unlicensed Driving Conviction–the failure to object cannot be explained away as a strategic choice.  *See Cornell v. Kirkpatrick*, 665 F.3d 369, 379 (2d Cir. 2011) (Trial counsel's failure to object to improper venue could not "be explained convincingly as resulting from a sound trial strategy" where objection could have resulted in separate trials in different counties); *Cox v. Donnelly*, 432 F.3d 388, 389 (2d Cir. 2005) (Trial counsel had no "strategic reason for . . . failing to object to an unconstitutional [jury] charge").

Moreover, a reasonably competent attorney would have objected because the error affected more than the Advisory Guidelines range.  *See* Fed. R. Crim. P. 32(a)(1) advisory

13

committee's note to 1983 amendment ("The defendant's interest in an accurate and reliable presentence report does not cease with the imposition of sentence."). A competent defense attorney has "a duty to continually evaluate the impact that each decision or action may have at later stages, including trial, sentencing, and post-conviction review." ABA Standards for Crim. Just. 4-1.3(f) (4th ed. 2017). The PSR is not merely a sentencing range worksheet. It becomes a formal court record that accompanies defendants throughout their incarceration and is used by the Bureau of Prisons to "determine[] the defendant's classification within the facility, his ability to obtain furloughs . . . the choice of treatment programs," and, where applicable, parole eligibility. Fed. R. Crim. P. 32(a)(1) advisory committee's note to 1983 amendment (quoting Fennell & Hall). For that reason, Congress has made clear that presentence reports must "be completely accurate in every material respect." *United States v. Lee*, 818 F.2d 1052, 1055 (2d Cir. 1987) (quoting H.R. Rep. No. 94-247, at 18 (1975), *as reprinted in* 1975 U.S.C.C.A.N. 674, 690). Errors surrounding the PSR "must not be taken lightly" even if "it is unlikely . . . that [defendant] was harmed by th[e] error." *United States v. Ursillo*, 786 F.2d 66, 71 (2d Cir. 1986). This case illustrates why: An uncorrected criminal history error may later affect the defendant's ability to obtain relief when Sentencing Guidelines Amendments become retroactive. Counsel's failure to object was therefore not a strategic choice, but "a clear lapse in representation." *Johnson*, 313 F.3d at 818.

### ii.    Trial Counsel's Performance Prejudiced Mr. Cedeno.

The prejudice prong of *Strickland* "does not require certainty." *DeLuca v. Lord*, 77 F.3d 578, 590 (2d Cir. 1996). It simply requires a defendant to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. This standard is "less demanding . . . than 'more likely than not.'"

14

*Gonzalez*, 722 F.3d at 135.  And the prejudice need not be extensive.  Any excess time spent

incarcerated "has Sixth Amendment significance."  *Glover*, 531 U.S. at 203.

It is reasonably likely that had Mr. McGuinness objected to the erroneous PSR, Mr.

Cedeno's sentence would have been lower.  The record proves it:

> THE COURT:  My belief is that the anticipated guidelines amendments on the issue of status points would result, if they were enacted today, in the same criminal history category, but it would just be four instead of six.  Is that your understanding as well?
> MR. BALSAMELLO: It is, yes.
> THE COURT: That's fine.  **So I just want to be clear to the parties that I am sentencing today with knowledge of upcoming guidelines amendments.**  I don't think, unless Mr. McGuinness tells me otherwise, that they have an impact on today's sentencing.  Mr. McGuinness, have you and has Mr. Cedeno had an opportunity under Federal Rule of Criminal Procedure 32 to review the presentence investigation report in this case?
> MR. McGUINNESS: Yes, your Honor.
> THE COURT: Do you, sir, and does your client have any objections to the contents of the presentence investigation report?
> MR. McGUINNESS: No, your Honor.
> . . .
> **THE COURT: Do you, therefore, agree with me that the upcoming guidelines amendments with respect to status points would not change your client's criminal history category?**
> **MR. McGUINNESS: Yes, your Honor.**

*See* Sentencing Tr. 6:21–8:4.  The Court raised Amendment 821 and *explicitly* stated that it was

sentencing with the Amendment in mind.  It then performed a live calculation showing that, on

the figures in the erroneous PSR, the Amendment would have no effect on Mr. Cedeno's

Criminal History Category.  The Court asked Mr. McGuinness directly whether he believed the

Amendment would leave Mr. Cedeno in Criminal History Category III.  Mr. McGuinness said he

did.  Had he objected, the same calculation would place Mr. Cedeno in Category II, for which

the applicable Guidelines range is 97 to 121 months—well below the range on which the Court

relied.  Given the Court's express intent to sentence with the Amendment in mind, there is a

reasonable probability the objection would have yielded a shorter sentence, whether at the top of

15

the Category II range or even the bottom of the Category III range.  That reasonable *probability* is sufficient to establish prejudice; it is "no answer to say . . . that defendant could have received the same sentence . . . at either level."  *Johnson*, 313 F.3d at 818.

The consequence of Mr. McGuinness' failure to object is not merely hypothetical. Amendment 821 was made retroactively effective on February 1, 2024.  *See* U.S. Sent'g Comm'n, *Part A of the 2023 Criminal History Amendment Retroactivity Data Report* (April 2026).  Because the incorrectly assessed point in Paragraph 75 was never cured, Mr. Cedeno cannot now obtain the benefit of the Amendment through a motion under § 3582(c)(2).  *See Dillon v. United States*, 560 U.S. 817, 831 (2010) (holding that under § 3582(c)(2), a court cannot revisit aspects of a sentencing decision unrelated to the retroactive amendment).  Mr. McGuinness' error forecloses Mr. Cedeno from pursuing the reduction to which he is entitled. This constitutes precisely the type of prejudice *Strickland* envisions.

## II.    The Statute of Limitations Does Not Bar Mr. Cedeno's Claim

### A.  Legal Standard

A federal prisoner seeking relief under 28 U.S.C. § 2255 is subject to a one-year limitations period that runs from the latest of:  (1) the date the judgment of conviction becomes final; (2) the date an unlawful government-created impediment to filing is removed; (3) the date the Supreme Court recognizes a new, retroactively applicable right; or (4) the date on which the facts supporting the claim could have been discovered through due diligence.  28 U.S.C. § 2255(f).  This one-year deadline is "a statute of limitations . . . not a jurisdictional bar," *Green v. United States*, 260 F.3d 78, 82 (2d Cir. 2001), and is subject to equitable tolling when "the petitioner shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."  *Rivas v. Fischer*, 687

16

F.3d 514, 538 (2d Cir. 2012) (quotation marks omitted) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)).[2]  The diligence required is not "extreme" or "exceptional" diligence; it is merely "*reasonable*" diligence.  *Baldayaque v. United States*, 338 F.3d 145, 153 (2d Cir. 2003). Mr. Cedeno satisfies both prongs.

### B.  Mr. Cedeno Pursued His Rights Diligently

In assessing diligence "in the attorney incompetence context," the Second Circuit considers four factors:  (1) "the purpose for which the petitioner retained the lawyer," (2) "his ability to evaluate the lawyer's performance," (3) "his financial and logistical ability to consult other lawyers or obtain new representation," and (4) "his ability to comprehend legal materials and file the petition on his own."  *Martinez v. Superintendent of E. Corr. Facility* (*Martinez I*), 806 F.3d 27, 31–32 (2d Cir. 2015) (citing *Doe v. Menefee*, 391 F.3d 147, 175 (2d Cir. 2004)); *Baldayaque*, 338 F.3d at 153 (applying the same factors to a § 2255 claim).  Each factor favors Mr. Cedeno, and "the period[] of inactivity do[es] not overcome the acts of diligence that [Cedeno] did exhibit."  *Martinez v. Superintendent of E. Corr. Facility* (*Martinez II*), 2016 WL 6462123, at *3 (E.D.N.Y. Oct. 31, 2016) (quotation marks omitted).

*Purpose.*  Mr. McGuinness was appointed to represent Mr. Cedeno in the underlying proceedings, including sentencing.  Reviewing the PSR for accuracy and raising meritorious objections fell within the scope of that representation.  *See Johnson*, 313 F.3d at 818 (noting the importance of objecting to inaccuracies in the PSR).  Mr. Cedeno's reliance on Mr. McGuinness to perform that core function fit "squarely within [his] reasonable expectations."  *Martinez I*, 806 F.3d at 32.

---

[2]  Note:  "the government [can] expressly waive[] its statute of limitations defense."  *Green*, 260 F.3d at 85.

***Ability to evaluate performance.*** Mr. Cedeno did not have the ability to evaluate Mr. McGuinness' performance. Mr. McGuinness repeatedly assured Mr. Cedeno that he was investigating the error in Mr. Cedeno's PSR when he was not. A client's ability to assess his attorney's performance is compromised when the attorney's misleading statements lead the client to believe the attorney is actively working on his behalf when he is not. *Martinez II*, 2016 WL 6462123, at *3. When pressed at meetings, Mr. McGuinness claimed that fixing the mistake would not alter Mr. Cedeno's sentence. As discussed in Section I.B.ii, *supra*, that was not true. But Mr. Cedeno had no reason to question his lawyer's word.

***Financial and logistical ability.*** Mr. Cedeno did not have the financial or logistical ability to consult other lawyers or obtain new representation. Mr. McGuinness was appointed under the Criminal Justice Act, 18 U.S.C. § 3006A, reflecting Mr. Cedeno's indigence at the time of the underlying proceedings. *See* Dkt. 9. That indigence has not abated, as Mr. Cedeno has been incarcerated continuously since sentencing and lacks the financial resources to retain private counsel. Mr. Cedeno was incarcerated immediately after his hearing and could not investigate the issue himself. He also trusted that Mr. McGuinness would appeal the sentence. After many fruitless attempts to reach Mr. McGuinness, Mr. Cedeno asked a family friend to go to Queens County and investigate. This friend confirmed he did not serve 30 days for the Unlicensed Driving Conviction. Cedeno Decl. ¶ 13.

***Ability to file petitions on his own.*** Mr. Cedeno has no legal training and the issues in this case are complicated. In fact, a second court-appointed lawyer was necessary to understand the interplay between Amendment 821, Rule 32, and *Strickland*'s prejudice standard. Mr. Cedeno filed a § 3582(c)(1)(A) motion after Amendment 821 became retroactive and he learned of its existence from custody.

18

Taken together, these factors establish Mr. Cedeno acted with reasonable diligence.  He repeatedly attempted to contact Mr. McGuinness, reasonably trusting his counsel to pursue the appeal, protect his rights, and respond to his inquiries.  And when those efforts proved fruitless, he filed a pro se motion.

### C.  Extraordinary Circumstances Prevented Timely Filing

Extraordinary circumstances are not defined by "how unusual the circumstance alleged to warrant tolling is . . . but rather how severe an obstacle it is for the prisoner endeavoring to comply with AEDPA's limitations period."  *Diaz v. Kelly*, 515 F.3d 149, 154 (2d Cir. 2008).  Attorney negligence may constitute an extraordinary circumstance when it is "so egregious as to amount to an effective abandonment of the attorney-client relationship."  *Rivas*, 687 F.3d at 538.  Refusing to act on a client's behalf on a "fundamental matter" meets that standard.  *Baldayaque*, 338 F.3d at 152 (failure to file habeas petition despite request is a fundamental matter); *see also Holland*, 560 U.S. at 652 (attorney's failures to file on time despite client's written requests, to research the proper filing date, to inform his client about the court's decision, and to communicate with his client "may well be . . . 'extraordinary'").

Mr. McGuinness' conduct meets that bar.  He failed to object to a clear and consequential error in the PSR that his client raised multiple times.  He ignored that the PSR itself flagged the relevant entry as uncorroborated.  PSR ¶ 75 ("[A] request for records was not sent.").  And after sentencing, when Mr. Cedeno asked Mr. McGuinness to appeal, Mr. McGuinness agreed to do so, but never did.  *See Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) ("We have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable.").  Mr. Cedeno has not heard from him since.  Cedeno Decl. ¶ 12.  Mr. McGuinness has "effective[ly] abandoned" his attorney-client

relationship with Mr. Cedeno.  *See Rivas*, 687 F.3d at 538.  Failing to act on these "fundamental matter[s]" constitutes extraordinary circumstances.  *See Baldayaque*, 338 F.3d at 152.

Mr. Cedeno's petition should therefore be equitably tolled.

**CONCLUSION**

For the foregoing reasons, Mr. Cedeno was prejudiced by Mr. McGuinness' clear lapse in representation.  As such, Mr. Cedeno respectfully requests that pursuant to § 2255(b), the Court resentence him or correct the sentence as may seem appropriate.

Dated: May 6, 2026

*/s/ Jordan Estes*
Jordan Estes
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
(212) 351-4000
jestes@gibsondunn.com
*Attorney for Defendant Jeremy Cedeno*

20